1   Bingham McCutchen LLP
    THOMAS KUHNLE (SBN 1041641)
2   email: tom.kuhnle@bingham.com
    KRISTEN M. PEZONE (SBN 224057)
3   email: kristen.pezone@bingham.com
    1900 University Avenue
4   East Palo Alto, CA 94303
    Telephone: 650.849.4882
5   Facsimile: 650.849.4800

6   Attorneys for Defendant
    BOSTON SCIENTIFIC CORPORATION

7

8               UNITED STATES DISTRICT COURT

9               NORTHERN DISTRICT OF CALIFORNIA

10                   SAN JOSE DIVISION

11              C07    03792    HRL

12  DONALD MASTERS,                        No.

13          Plaintiff,
                                           DEFENDANT BOSTON SCIENTIFIC
        v.                                 CORPORATION'S CERTIFICATION
14                                         OF SERVICE OF NOTICE TO
    BOSTON SCIENTIFIC CORPORATION,         ADVERSE PARTY OF REMOVAL TO
15  BOSTON SCIENTIFIC CORPORATION 2000     FEDERAL COURT
    LONG TERM INCENTIVE PLAN and DOES 1-
16  50,

17          Defendant.

18

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /
    A/72098583.1/0088579-0000326656

1    TO THE CLERK OF THE ABOVE-ENTITLED COURT:

2    PLEASE TAKE NOTICE that on July 24, 2007, Defendant Boston Scientific

3    Corporation filed with the Superior Court of the State of California, County of Santa Clara, and

4    served on the adverse party in this action, Plaintiff Donald Masters, a Notice to Adverse Party of

5    Notice of Removal of to Federal Court of Civil Action Pursuant 28 U.S.C. §§ 1332, 1441 and

6    1446 a true and correct copy of which is attached hereto as Exhibit A, along with the proof of

7    service on Plaintiff.

8    DATED:  July 24, 2007                              Bingham McCutchen LLP

9

10

11                                    By: _____
                                           Thomas Kuhnle
12                                         Kristen M. Pezone
                                           Attorneys for Defendant
13                                    BOSTON SCIENTIFIC CORPORATION

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATE OF SERVICE TO ADVERSE PARTY OF NOTICE OF REMOVAL

## PROOF OF SERVICE

1

2          I am over 18 years of age, not a party to this action and employed in the County

3   of San Mateo, California at 1900 University Avenue, East Palo Alto, California  94303-2223.  I

4   am readily familiar with the practice of this office for collection and processing of

5   correspondence for mailing with the United States Postal Service and correspondence is

6   deposited with the United States Postal Service that same day in the ordinary course of business.

7          Today I served the attached:

8          DEFENDANT BOSTON SCIENTIFIC CORPORATION'S
            CERTIFICATION OF SERVICE OF NOTICE TO ADVERSE
9          PARTY OF REMOVAL TO FEDERAL COURT

10  by causing a true and correct copy of the above to be placed in the United States Mail at East

11  Palo Alto, California in sealed envelope(s) with postage prepaid, addressed as follows:

12         Robert B. Nichols
            Attorney at Law
13         300 South First Street, Suite 205
            San Jose, CA  95113
14

15         Stephen R. Pappas
            Attorney at Law
16         550 S. California Ave., Suite 320
            Palo Alto, CA  94306
17

18          I declare under penalty of perjury under the laws of the State of California that the

19  foregoing is true and correct and that this declaration was executed on July 24, 2007.

20

21  _____

22                          Mary Maggini

23

24

25

26

27

28

A/72107778.1

7

PROOF OF SERVICE

# EXHIBIT A

1   Bingham McCutchen LLP
    THOMAS E. KUHNLE (SBN 178055)
2   KRISTEN M. PEZONE (SBN 224057)
    1900 University Avenue
3   East Palo Alto, CA 94303-2223
    Telephone: 650.849.4400
4   Facsimile: 650.849.4800
    Email: tom.kuhnle@bingham.com
5
    Attorneys for Defendant
6   BOSTON SCIENTIFIC CORPORATION

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                IN AND FOR THE COUNTY OF SANTA CLARA

10

11  DONALD MASTERS,                        Case No. 107CV085180

12              Plaintiff,                 DEFENDANT BOSTON SCIENTIFIC
                                           CORPORATION'S NOTICE OF
13      v.                                 REMOVAL TO ADVERSE PARTY

14  BOSTON SCIENTIFIC CORPORATION,
    BOSTON SCIENTIFIC CORPORATION 2000
15  LONG TERM INCENTIVE PLAN AND DOES
    1-50,
16                                         Complaint Filed:   May 2, 2007
                Defendants.                Trial Date:        None Set
17

18

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25   / /

26   . /

27  ' /

28
    A/72095280.1/0088579-0000326656

─────────────────────────────────────────────

                  DEFENDANT'S NOTICE OF REMOVAL TO ADVERSE PARTY

1          PLEASE TAKE NOTICE that a Notice of Removal of Civil Action Under 28

2    U.S.C. §§ 1332, 1441 and 1446 concerning this action, was filed in the United States District

3    Court, Northern District of California, San Jose Division, on July 24, 2007.  A true and correct

4    copy of the Notice of Removal of Civil Action Under 28 U.S.C. §§ 1332, 1441 and 1446 filed by

5    Defendant Boston Scientific is attached to this Notice, and is served and filed herewith.

6    DATED:  July 24, 2007

7

8                                Bingham McCutchen LLP

9

10                     By: _____

11                          Thomas E. Kuhnle

                         Kristen M. Pezone

12                           Attorneys for Defendant

                  BOSTON SCIENTIFIC CORPORATION

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S NOTICE OF REMOVAL TO ADVERSE PARTY

1

<u>PROOF OF SERVICE</u>

2         I am over 18 years of age, not a party to this action and employed in the County

3    of San Mateo, California at 1900 University Avenue, East Palo Alto, California  94303-2223.  I

4    am readily familiar with the practice of this office for collection and processing of

5    correspondence for mailing with the United States Postal Service and correspondence is

6    deposited with the United States Postal Service that same day in the ordinary course of business.

7         Today I served the attached:

8         DEFENDANT BOSTON SCIENTIFIC CORPORATION'S
     NOTICE OF REMOVAL TO ADVERSE PARTY

9

by causing a true and correct copy of the above to be placed in the United States Mail at East

10   Palo Alto, California in sealed envelope(s) with postage prepaid, addressed as follows:

11

12        Robert B. Nichols
     Attorney at Law

13        300 South First Street, Suite 205
     San Jose, CA  95113

14

15        Stephen R. Pappas
     Attorney at Law

16        550 S. California Ave., Suite 320
     Palo Alto, CA  94306

17        I declare under penalty of perjury under the laws of the State of California that the

18   foregoing is true and correct and that this declaration was executed on July 24, 2007.

19

20

21                                 Mary Maggini

22

23

24

25

26

27

28

7

# EXHIBIT A

1   Bingham McCutchen LLP
    THOMAS KUHNLE (SBN 1041641)
2   email: tom.kuhnle@bingham.com
    KRISTEN M. PEZONE (SBN 224057)
3   email: kristen.pezone@bingham.com
    1900 University Avenue
4   East Palo Alto, CA 94303
    Telephone: 650.849.4882
5   Facsimile: 650.849.4800

6   Attorneys for Defendant
    BOSTON SCIENTIFIC CORPORATION
7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                        SAN JOSE DIVISION

11

| | |
|---|---|
| 12  DONALD MASTERS, | No. |
| 13          Plaintiff, | DEFENDANT BOSTON SCIENTIFIC |
|          v. | CORPORATION'S NOTICE OF |
| 14 | REMOVAL |
| BOSTON SCIENTIFIC CORPORATION, | |
| 15  BOSTON SCIENTIFIC CORPORATION 2000 | |
| LONG TERM INCENTIVE PLAN and DOES 1- | |
| 16  50, | |
| 17          Defendant. | |

18

19          Defendant Boston Scientific Corporation ("Defendant"), which was sued in its

20   own name and incorrectly as "Boston Scientific Corporation 2000 Long Term Incentive Plan," in

21   *Donald Masters v. Boston Scientific Corporation, Boston Scientific Corporation 2000 Long*

22   *Term Incentive Plan and Does 1-50*, filed as Case No. 107CV085180 in the Superior Court of

23   the State of California for the County of Santa Clara, gives notice that this case is removed to the

24   United States District Court for the Northern District of California pursuant to 28 U.S.C.

25   §§ 1332, 1441 and 1446.

26   I.    **JURISDICTION**

27          1.    For reasons set forth in greater detail below, this Court has jurisdiction

28   over this action under 28 U.S.C. §§ 1332 and 1441. Jurisdiction exists pursuant to 28 U.S.C.

A/72098214.1/0088579-0000326656

1  §§ 1332 and 1441 because there is complete diversity between the parties and the amount in

2  controversy exceeds $75,000.

3  II.    **INTRADISTRICT ASSIGNMENT**

4       2.    Plaintiff Donald Masters ("Plaintiff") filed this case in the Superior Court

5  of California, County of Santa Clara.  Therefore, this case should be assigned to the San Jose

6  Division of the Northern District of California.  Civil L.R. 3-2(e).

7  III.   **COMPLIANCE WITH STATUTORY REQUIREMENTS**

8       3.    In accordance with 28 U.S.C. § 1446(a), attached as Exhibits A, B and C

9  are true and correct copies of all process and pleadings filed or served in the state court in this

10  action including:  Plaintiff's Complaint, Plaintiff's First Amended Complaint, and Defendant's

11  Answer.  Plaintiff served Defendant with the First Amended Complaint on June 26, 2007.

12  Accordingly, this Notice of Removal is timely under 28 U.S.C. § 1446(b).

13       4.    Pursuant to 28 U.S.C. § 1446(d), Defendant will promptly provide written

14  notice of removal of this action to Plaintiff and will promptly file a copy of this Notice of

15  Removal with the Clerk of the Superior Court of California in and for the County of Santa Clara.

16  IV.    **STATEMENT OF THE GROUNDS FOR REMOVAL**

17       5.    Defendant removes this case pursuant to 28 U.S.C. §§ 1332 and 1441

18  because there is complete diversity between the parties and the amount in controversy exceeds

19  $75,000.

20       6.    Plaintiff is a citizen of California.  *See* First Amended Complaint, attached

21  hereto as Exh. B, ¶ 1. Plaintiff admits that Defendant is a Delaware corporation with its principal

22  place of business in Massachusetts.  *Id.* Exh. B, ¶ 2.  Boston Scientific Corporation 2000 Long

23  Term Incentive Plan is a sham or nominal defendant.  *Id.* Exh. B, ¶ 3. The citizenship of the

24  "Doe" defendants is irrelevant for purposes of removal based on diversity jurisdiction.  28 U.S.C.

25  § 1441(a).  Therefore, none of the defendants is a citizen of California and there is complete

26  diversity between the parties.

27       7.    Plaintiff seeks more than $75,000 in damages.  *See* First Amended

28  Complaint, attached hereto as Exh. B, ¶ 1 of Prayer for Relief, p. 14.

A/72098214.1/0088579-0000326656                                2

1    V.    **CONCLUSION**

2          8.    By removing this case, Defendant does not waive and is not estopped from

3    raising any defenses that were available to it in state court. *See Clark v. Wells*, 203 U.S. 164,

4    171 (1906).

5          WHEREFORE, pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, Defendant

6    removes this case from the Superior Court of the State of California in and for the County of

7    Santa Clara to the United States District Court for the Northern District of California.

8

9    DATED: July 24, 2007                               Bingham McCutchen LLP

10

11

12                                        By: _____
                                               Thomas Kuhnle
13                                             Kristen M. Pezone
                                          Attorneys for Defendant
14                                        BOSTON SCIENTIFIC CORPORATION

15

16

17

18

19

20

21

22

23

24

25

26

27

28

A/72098214.1/0088579-0000326656                      3

DEFENDANT BOSTON SCIENTIFIC CORPORATION'S NOTICE OF REMOVAL

# EXHIBIT A

SUM-100

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*



FILED

2007 MAY -2 PM 4:13

KIRI TORRE
CHIEF EXEC. OFFICER/CLERK
SUPERIOR COURT OF CA
COUNTY OF SANTA CLARA
BY _____ DEPUTY
S. GANCAYCO

UCS

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
BOSTON SCIENTIFIC CORPORATION, BOSTON SCIENTIFIC
CORPORATION 2000 LONG TERM INCENTIVE PLAN and DOES
1-50;

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
DONALD MASTERS

---

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.   A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case.  There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.  If you cannot pay the filing fee, ask the court clerk for a fee waiver form.  If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante.  Una carta o una llamada telefónica no lo protegen.  Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte.  Es posible que haya un formulario que usted pueda usar para su respuesta.  Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol), en la biblioteca de leyes de su condado o en la corte que le quede más cerca.  Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales.  Es recomendable que llame a un abogado inmediatamente.  Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados.  Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro.  Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol) o poniéndose en contacto con la corte o el colegio de abogados locales.*

---

The name and address of the court is:
*(El nombre y dirección de la corte es):*
SUPERIOR COURT
191 N. FIRST
SAN JOSE, CA 95113

CASE NUMBER *(Número del Caso):*
1 07 CV 085180

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
ROBERT B. NICHOLS ESQ.
300 S. FIRST ST #205    (408) 298-9755
SAN JOSE CA 95113

DATE: MAY 2 2007          Kiri Torre, Chief Executive Officer/Clerk, by _____, Deputy
*(Fecha)*                 *Clerk, (Secretario)*    S. GANCAYCO    *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED: You are served**
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [ ] on behalf of *(specify):*

   under: [ ] CCP 416.10 (corporation)          [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation)  [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)
          [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

[SEAL]

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

©EB

Code of Civil Procedure §§ 412.20, 465

ORIGINAL

ROBERT B. NICHOLS (SB# 224763)
1   nichols@nicholslawgroup.com
    300 South First Street, Suite 205
2   San Jose, CA 95113
    Telephone: (408) 298-9755
3   Facsimile: (408) 298-9699
    Attorney for Plaintiff
4   DONALD MASTERS

5   STEPHEN R. PAPPAS (SB# 158560)
    550 S. California Ave., Suite 320
6   Palo Alto, California 94306
    Telephone: 650 858-8400
    Facsimile: 650 858-8508
7

8                SUPERIOR COURT OF THE STATE OF CALIFORNIA
                  IN AND FOR THE COUNTY OF SANTA CLARA
9

10  DONALD MASTERS,                    )
                      Plaintiff,       )      Case No. 1-07   CV085180
11                                     )
                                       )
12       vs.                           )      COMPLAINT
                                       )
13                                     )
                                       )
14  BOSTON SCIENTIFIC CORPORATION,     )
    BOSTON SCIENTIFIC CORPORATION 2000 )
15  LONG TERM INCENTIVE PLAN and  DOES )
16  1-50,                              )
                      Defendants.      )
17

18                        INITIAL COMPLAINT

19                    I. JURISDICTION AND PARTIES

20       1.  Jurisdiction in this action is founded upon complete diversity of citizenship pursuant

21  to 28 U. S. C. 1332.

22       2.  At all times relevant hereto, Plaintiff Donald Masters ("Mr. Masters") has been a

23  resident of the State of California, County of Santa Clara.

24       3.  At all times relevant hereto, Boston Scientific Corporation ("BSC") has been a

25  Delaware corporation with its principal place of business in Massachusetts.

26       4.  The primary Plan at issue in this dispute is the Boston Scientific Corporation 2000

27  Long Term Incentive Plan. ("2000 Plan " or "2000 Stock Option Plan").  Plaintiff believes the

28  Plan is not a legal person, but, as a precaution, names it as a party.

INITIAL COMPLAINT – Donald Masters v. Boston Scientific Corporation    Page 1 of 15

FILED  Santa Clara Co
05/02/07   4:12pm
Kiri Torre
Chief Executive Offic
By: ssancayco DISCIVO
R#200700043626
CK                 $320.00
                   $320.00
Case#: 1-07-CV-085180

5. Plaintiffs are ignorant of the true names and capacities of defendants sued herein as DOES 1 through 50, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe and thereon allege that each of the fictitiously-named defendants is responsible in some manner for the occurrences alleged herein, and that plaintiffs' damages as herein alleged were proximately caused by their conduct. Included among the Doe defendants are the BSC Board of Directors and any unnamed Committee or Committees which acted as Administrator(s) of the 2000 Plan, and Human Resources personnel acting or designated as Administrator for ministerial purposes only.

6. At all times relevant hereto, each of the defendants named herein was the agent and employee of each of the other defendants, and in doing the things herein alleged, was acting within the course and scope of such agency and employment and with the permission and consent of its co-defendants.

## II. VENUE

7. Venue lies in Santa Clara County, because Plaintiff resides in this County; Defendant has offices and factories in and does business in this District; and some of the breaches alleged occurred in this County. This action arises in Santa Clara County because it arose from Plaintiff's employment with Defendant at offices then in Sunnyvale, Santa Clara, and Mountain View, California; some of the breaches alleged occurred in Santa Clara County; a substantial part of the omissions and events giving rise to Plaintiff's claim occurred in Santa Clara County; and Defendant does business and can be found in Santa Clara County.

## IV. FACTS; GENERAL

9. Mr. Masters is currently employed and in good standing with BSC, with whom he first became employed in July 1994.

10.. During his tenure at BSC, it has obtained 12 patents in the field of medical devices

1   for which he received credit as the inventor or co-inventor.

2       11. This dispute arises because of the interplay between changes in provisions of BSC's

3   Stock Option Plans and the less than 3 year period between January 2001 and December 2003

4   during which he did not work for BSC.

5                                **V. FACTS**
                      **GENERAL STOCK OPTION PROVISIONS**
6
7       12. BSC has had at least 4 Stock Option Plans, adopted respectively in 1992, 1995, 2000,

8   and 2003. The terms of those Plans and the basis of Mr. Master's allegations herein are discussed

9   more fully at the end of this complaint.  These plans were respectively referred to as Long Term

10  incentive Plans and are denominated by their year of adoption.

11      13. Under the Plans, a terminated employee lost all rights to grants within 6 months prior

12  to termination, lost all rights to options unvested on the date of termination, and lost all rights to

13  exercise vested options 90 days from the date of termination.  The !

14      14. The Plans provided that a retired employee kept all options granted, even those

15  granted within 6 months prior to termination; all options granted vested 100% on the date of

16  termination; and the exercise date was extended to 3 years from date of termination:

17          (A) immediately upon the cessation of a Participant's employment or other

18      service relationship with the Company and its Affiliates by reason of the

19      Participant's Disability, or with respect to a Participant who is an

20      employee or director of the Company or its Affiliates, by reason of such

21      Participant's Retirement, all Stock Options, SARs and Restricted Stock

22      Awards held by the Participant (or by a permitted transferee under Section

23      4.a (4)) immediately prior to such Disability or, as applicable, Retirement,

24      will become vested and, where exercisability is relevant, will remain

25      exercisable for the lesser of three years or the period ending on the latest

26      date on which such Stock Option or SAR could have been exercised if the

27      Participant's employment or other service relationship with the Company

28      and its Affiliates had continued unchanged, whereupon such Stock

INITIAL COMPLAINT – Donald Masters v. Boston Scientific Corporation    Page 3 of 15

Options and SARs shall terminate; (quote from 2000 Plan)

15.  BSC informed participants that, under the 1992 and 1995 plans, retirement was defined by reference to the BSC's retirement and other benefit plans as termination at or after age 62.

16.  The confirming agreements for each grant sent to each participant under the 1992 and 1995 Plans did not define retirement.

17.  The 2000 Stock Option Plan was presented to BSC shareholders by its Directors in a proxy statement dated April 3, 2000 for suggested adoption at BSCs May 9, 2000 Annual Shareholders Meeting.

18.  The first option grant under the 2000 Plan was made May 9, 2000.

19.  Under the 2000 Plan, as reflected in proxy statements filed with the SEC, as well as subsequent plans, an employee was considered retired if on date of termination, the employee was over 50 years old, had worked for BSC at least 5 years, and the sum of his age and years of service equaled 62. ("the rule of 62"):

> "RETIREMENT": Unless the Administrator expressly provides otherwise, cessation of employment or other service relationship with the Company and its Affiliates if, as of the date of such cessation, (i) the Participant has attained age 50 and has accrued at least five years of service with the Company and its Affiliates, and (ii) the sum of the Participant's age and years of service as of such date equals or exceeds 62.

20.  Based upon Plaintiff's knowledge and information as a BSC employee, he alleges that BSC did not inform its employees of the new definition of retirement. It continued to inform them that retirement was defined as age 62 and continued to administer its plans as if the definition had not changed.

21.  The confirming agreements for each grant sent to each participant under the 2000 Plan led employees to believe the definition of retirement remained the same:

> For purposes of this Agreement, "Retirement" means cessation of employment and other association with the Company and any affiliates or

INITIAL COMPLAINT – Donald Masters v. Boston Scientific Corporation    Page 4 of 15

1    subsidiaries of the Company at or after the normal retirement date

2    specified in the Company's pension or other deferred compensation plan

3    applicable generally to employees of the Company or, with the consent of

4    the Committee, any early retirement date so specified.

5    22.  With respect to whether provisions of the Plan or confirming agreements control

6    when in conflict, the confirming agreements provide:

7    In the event of a conflict between any term or provision contained in this

8    Agreement and a term or provision of the Plan, the applicable terms and

9    provisions of the Plan will govern and prevail.

10   23.  BSC has failed and refused to provide Mr. Master's with any document reflecting a

11   valid amendment to the 2000 Plan removing the rule of 62 from it or delaying its

12   implementation.

13   24. The BSC 10-K of March 27, 2002 proposes the amendment of the 1992 and 1995

14   plans. It would have been approved by the shareholders in May. The amendment provided that,

15   with respect to options granted after May 7, 2001, retirement status is determined under the rule

16   of 62.

17   25.  Plaintiff is informed that in 2004 BSC made a similar retroactive amendment

18   applicable to all previous grants.

19   26.  BSC Human Resources personnel have been unwilling or unable and have refused to

20   direct Mr. Masters to any document reflecting that the 2000 Plan was different from or was ever

21   amended to differ from the above described terms. Those terms were reflected in the Plan

22   attached to the company's 2000 proxy statement, as filed with the SEC.

23                          **VI. FACTS**
                    **GENERAL EMPLOYMENT**
24
25   27. Mr. Masters began working for BSC in July 1994.

26   28. He was born on January 9, 1942.

27   29. He left BSC's employment on January 12, 2001.

28   9. At that time Mr. Masters had 6.5 years of service with BSC and was 59 years old so

1    that he had more than 5 years of service and the sum of his years of service and age exceeded 62.

2        30.  On December 18, 2003, he returned to BSC as a defined term employee.

3        31.  On May 3, 2004, he again became a regular, fulltime employee of BSC, which is his

4    present status.

5        32.  During his employment with BSC, he received numerous stock option grants

6    discussed below under the 1992, 1995, 2000, and 2003 Plans, both before and after his 2001 – 3

7    leave of absence.

8        33.  After he left BSC on January 12, 2001, Mr. Masters received no communications

9    from BSC regarding his options.

10        34.  He received no communications from Mellon regarding his options and no

11    communications from BSC regarding Mellon Investor Services ("Mellon") administration of the

12    Plans. Mr. Musters is informed that Mellon formally began administering the Plans shortly after

13    he left BSC.

14        35.  He was not a BSC stockholder in 2000 or thereafter so he did not receive proxy

15    statements, annual reports or other reports of shareholder actions, director action, or proposed

16    actions.  He had no access to the portions of the BSC website accessible only to shareholders.

17                                    **VII. FACTS**

18                              **NON-EXERCISE OF OPTIONS**

19        36.  Based upon the information given him by BSC, Mr. Masters believed that all his

20    options expired 90 days after January 12, 2001. At that time BSC's stock price was such that his

21    pre 2001 options were "underwater" and worthless. He did not exercise them.

22        37.  As a result of incorrect information BSC had given to its employees Mr. Masters was

23    unaware that his options were exercisable on January 12, 2004. He therefore made no attempt to

24    exercise them. As is more fully set out below, at that time BSC's stock price was such that the

25    options were worth $891,248 if exercised.  Had he known they were exercisable, he would have

26    exercised them.

27                                  **VIII. FACTS;**

28              **DISCOVERY OF THE BREACH AND MISREPRESENTATION**

        38.  In January 2007, Mr. Masters began contemplating eventual retirement and

determining his financial position.

39.  In so doing, he became curious about and checked the status of options granted to him on and after May 2004, when he reentered permanent regular employment with Defendant BSC.

40.  In early January 2007, he contacted one of BSC's Human Resources officers in Nova Scotia who professed ignorance and directed him to an informational matrix on Mellon's website, which now administers BSC's stock option plans.

41.  The Mellon Matrix indicated that all Mr. Master's stock options granted prior to his leaving BSC's employment in 2001 terminated 90 days later on April 12, 2001. It included all grants under the 1992, 1995, and 2000 Plans, including the May 9, July 26, and December 6 grants under the 2000 Plan.

42.  In a phone conversation, a Mellon employee informed Mr. Masters that BSC had informed Mellon in 2001 that he was a terminated employee rather than a retired employee and that all his options terminated on April 12, 2001, 90 days after he left BSC employment. He said all Mellon's information was given to it by BSC.

43.  This 90-day termination rule was consistent with BSC's representations to Mr. Masters and other BSC employees and with Mr. Master's previous understanding from BSC of the rules governing options granted during his first period of employment with BSC.

44.  However, the nature of the matrix's reference to the rule of 62 was confusing. He wondered if it had affected his pre 2001 option grants.

45.  On January 16, 2007, Mr. Masters talked to Mr. Tony Ronan, who worked for a Nova Scotia company to which BSC had outsourced some of its Human Resources functions.

46.  Mr. Ronan stated that on January 12, 2001, Mr. Masters had been eligible for the rule of 62 and should have had 36 months to exercise his options.

47.  Mr. Ronan stated that Mr. Masters should have been informed by the BSC Human resources Department at termination and have been asked to sign an "understanding of terms"

48.  Mr. Ronan stated that Mr. Masters should have been given notice by Mellon previous to the expiration of the 36 month exercise period.

INITIAL COMPLAINT – Donald Masters v. Boston Scientific Corporation    Page 7 of 15

49. Mr. Ronan expressed his opinion that BSC thought all this was happening.

50. Mr. Ronan stated that Mr. Masters had missed his last chance to exercise the option at 36 months and the period could not be extended.

51. Mr. Ronan referred Mr. Masters to Dan Bird and Kathleen Shober of the Global Compensation Department.

52. On January 19, 2007, Mr. Masters inquired about the options at the office of Ms. Susan Marconi in California. Referring to several one-page documents she held in her hands, she informed him that the rule of 62 did not come into effect until May 2001. She did not provide or show the documents to Mr. Masters.

53. Mr. Masters started asking questions. On February 5, 2007, he sent an email requesting clarification to Linda Clifford.

54. On February 27, 2007, Dan Bird replied in an email that the rule of 62 had applied to all of Mr. Master's pre 2001 options so that they vested 100% when he left BSC and were exercisable until January 12 2004. He copied Susan Marconi and Linda Clifford. Mr. Bird told Mr. Masters he should have known this; it was his responsibility to know and take appropriate action; and, consequently, there was nothing BSC could do.

55. A March 9, 2007 email from Mr. Bird to Mr. Masters did not copy the other parties to the first email exchange. In it Mr. Bird stated that he had made a mistake in the February 27 email. Attached to it was a matrix Mr. Bird said was in effect on January 12, 2001. It reflected that the rule of 62 applied only to options granted after May 19, 2001.

56. Mr. Masters challenged the purported matrix's authenticity as a 2001 official document because it looked inauthentic, contained no document dates, and included 2004 plan grants.

57. Mr. Bird admitted that the matrix was something he had put together himself.

58. Mr. Masters then requested his employment records and had several exchanges concerning them with Mr. Michael Lucey of BSC's Fremont office.

59. On two occasions, Mr. Lucey informed Mr. Masters that all his pre 2001 options had terminated 90 days after he left BSC.

60. Mr. Masters then began searching BSC SEC filings for information.

61. He discovered that the 2000 BSC stock option plan presented for approval by BSC stockholders in the company's 2000 proxy statement contained the rule of 62, making his options exercisable on 3 years after he left BSC.

62. He confronted Ms. Marconi and Mr. Lucey in an April 3, 2007 email with this information and asked for an explanation.

63. Ms. Marconi responded that she would set up a conference call.

64. He was put off for some time until a conference call was scheduled for April 19, 2007 between him, Kathleen Shober, and Anne Thompson.

65. Mr. Masters requested his attorneys to participate.

66. During the conference call, Kathleen Shober and Thompson claimed that the rule of 62 had not been put into effect because BSC's accounting department or outside financial or accounting consultants had said that to do so would endanger BSC's ability to use the pooling method of accounting for corporate acquisitions and mergers.

67. They said BSC switched to the purchase method of accounting after May 2001, when it began using the rule of 62 for all option grants.

68. They asserted that the definition of retirement for all plans and grants prior to May 2001 was age 62. When asked if this was as stated in the BSC retirement plan, they refused to answer.

69. When asked if there had been any valid action or if any document reflected explicit, valid action by the BSC Board of Directors or any Committee to change the rule of 62 provision in the 2000 plan, they refused identify any document or answer in any way.

## IX. FACTS
## SPECIFIC OPTION GRANTS

46. On January 12, 2001, BSC Stock closed at $36.25. Mr. Masters received the following 2000 Plan Options (which are reflected on the Mellon matrix as having expired January 12, 2001) with the following stock split/dividend equivalences, exercise prices, and values as of January 12, 2004 under the 2000 Plan prior to leaving BSC on January 2, 2001:

| Grant Date | Split Equivalence of Shares Granted | Exercise Price | Value Of Options |
|---|---|---|---|
| a) May 9, 2000 | 7000 | $14.156 | $154,658 |
| b) July 25, 2000 | 7000 | $8.500 | $194,250 |
| c) Dec. 6, 2000 | 18000 | $6.120 | $542,340 |
| TOTAL | | | $891,248 |

47. He received another grant of 3000 shares under the 2000 Plan on May 3, 2004 after returning to his employment with BSC. Since he is still employed by BSC, that grant is still exercisable and is not in dispute.

48. Mr. Masters received the following 1992 Plan Options with the following current stock split/dividend equivalences under the 2000 Plan prior to leaving BSC on January 2, 2001:

| Grant Date | Split Equivalence | |
|---|---|---|
| a) Dec. 7, 1999 | 2220 | N/A |

49. Mr. Masters received the following 1995 Plan Options with the following stock split/dividend equivalences prior to leaving BSC on January 2, 2001:

| Grant Date | Shares Granted | Split Equivalence |
|---|---|---|
| a) April 19, 1999 | 2500 | 5000 |
| b) May 9, 1996 | 2000 | |
| c) May 4, 1998 | | 6600 |
| d) May 5, 1997 | | |

## IX. FIRST CLAIM FOR RELIEF
## BREACH OF CONTRACT

50. The allegations of paragraphs 1 through 49 above are reiterated and incorporated herein by reference.

51. BSC's Stock Option Plans, including its 2000 Plan, constitute and are in the nature of contracts with its employees.

52. BSC grants participants the opportunity to later acquire shares at a hoped for favorable price in return for the participants' agreement to pay the exercise price and provide

hoped for additional productivity and innovation.

53.  BSC had and has a contractual duty of good faith, fair dealing, and honesty in fulfilling its contractual obligations under the Plan.

54.  In misinforming participants with respect to and failing to disclose BSC's contractual obligation to allow exercise of the options within 3 years rather than 90 days of termination, BSC breached its contractual duties.

56.  But for this contractual breach, Mr. Masters would have exercised his options and gained $891,248.

## X. SECOND CLAIM FOR RELIEF
### BSC's MISREPRESENTATION, FAILURE TO DISCLOSE, OR MISTAKE

57.  The allegations of paragraphs 1 through 56 above are reiterated and incorporated herein by reference.

58.  BSC informed Mr. Masters and other Participants in the 2000 Plan through employee verbal and written communications, the option grant confirmation agreements, other documents, and websites of BSC, Mellon, and others that to be considered retired under the 2000 Stock Option Plan, one must be at least 62 years old, as specified in the Company's Retirement Plan.

59.  BSC had a duty to properly represent and disclose the Plan's exercise terms.

60.  But for this misrepresentation, failure to disclose, and/or mistake, Mr. Masters would have exercised his options and gained $891,248.

## XI. THIRD CLAIM FOR RELIEF
### MISREPRESENTATION, FAILURE TO DISCLOSE, OR MISTAKE
### BY BSC'S OFFICERS, DIRECTORS, EMPLOYEES, AND AGENTS

61.  The allegations of paragraphs 1 through 60 above are reiterated and incorporated herein by reference.

62.  BSC's officers, directors, employees, and agents had a duty to properly implement the 2000 Plan and properly represent and disclose the Plan's exercise terms.  Some of them were named as Administrators of the Plan.

63.  As part of their duties, BSC's officers, directors, employees, and agents informed Mr. Masters and other Participants in the 2000 Plan through employee verbal and written

INITIAL COMPLAINT – Donald Masters v. Boston Scientific Corporation    Page 11 of 15

1  communications, the option grant confirmation agreements, other documents, and websites of

2  BSC, Mellon, and others that to be considered retired under the 2000 Stock Option Plan, one

3  must be at least 62 years old, as specified in the Company's Retirement Plan.

4      64.  But for this misrepresentation, failure to disclose, and/or mistake, Mr. Masters would

5  have exercised his options and gained $891,248.

6  ## XI. FOURTH CLAIM FOR RELIEF
   ## BSC'S FAILURE TO ADMINISTER THE STOCK OPTION PLANS
7  ## WITH PRUDENCE, REASONABLE CARE, AND COMPETENCE

8      65.  The allegations of paragraphs 1 through 64 above are reiterated and incorporated

9  herein by reference.

10     66.  In establishing the Long Term Incentive Plans, BSC undertook to, and had an

11 independent duty to, administer the Plan with prudence, reasonable care, and competence.

12     67.  Such a standard requires informing participants of the terms of the Plan and their

13 actual exercise rights, their rights thereunder, not misinforming them, and assisting them in

14 safeguarding their rights.

15     68.  BSC did not meet this standard.

16     69.  But for this failure, imprudence, lack of care, and lack of competence, Mr. Masters

17 would have exercised his options and gained $891,248.

18 ## XII. FIFTH CLAIM FOR RELIEF
   ## FAILURE OF BSC'S OFFICERS, DIRECTORS, EMPLOYEES, AND AGENTS
19 ## TO ADMINISTER THE STOCK OPTION PLANS
20 ## WITH PRUDENCE, REASONABLE CARE, AND COMPETENCE

21     70.  The allegations of paragraphs 1 through 69 above are reiterated and incorporated

22 herein by reference.

23     71.  BSC's officers, directors, employees, and agents undertook to, and had an

24 independent duty to, administer the Plan with prudence, reasonable care, and competence. Some

25 of them were named as Administrators of the Plan.

26     72.  Such a standard requires informing participants of the terms of the Plan and their

27 actual exercise rights, their rights thereunder, not misinforming them, and assisting them in

28 safeguarding their rights.

73. BSC's officers, directors, employees, and agents did not meet this standard.

74. But for this failure, imprudence, lack of care, and lack of competence, Mr. Masters would have exercised his options and gained $891,248.

## XIII. SIXTH CLAIM FOR RELIEF
### BSC'S BREACH OF FIDUCIARY DUTY TO APPROPRIATELY ADMINISTER THE PLANS, DISCLOSE PARTICIPANTS' RIGHTS, PREVENT BREACHES AND VIOLATIONS OF THE PLAN

75. The allegations of paragraphs 1 through 74 above are reiterated and incorporated herein by reference.

76. BSC's position as long standing employer and Sponsor, of the 2000 Plan and other employee benefits, (as well as its naming some of them as the Plans Administrators) put it in such a position of trust and confidence with all participants and employees, and particularly Mr. Masters, that it owed them a fiduciary duty to appropriately administer the Plan, properly disclose participant's rights, properly disclose the terms and conditions of the 2000 Plan, assist them in exercising and protecting their rights, and prevent breaches and violations of the Plan.

77. Its failure to do so was the proximate cause of Mr. Masters' inability to exercise his options.

78. But for this failure, and breach of its fiduciary duties,, Mr. Masters would have exercised his options and gained $891,248.

## XIV. SEVENTH CLAIM FOR RELIEF
### BREACH OF FIDUCIARY DUTY TO APPROPRIATELY ADMINISTER THE PLANS, DISCLOSE PARTICIPANTS' RIGHTS, PREVENT BREACHES AND VIOLATIONS OF THE PLAN BY BSC'S OFFICERS, DIRECTORS, EMPLOYEES AND AGENTS

79. The allegations of paragraphs 1 through 78 above are reiterated and incorporated herein by reference.

80. BSC's officers, directors, employees, and agents implemented, administered, and conducted its fiduciary acts, responsibilities, and duties on BSC's behalf. Some of them were named Administrators of the Plan. As such they were also fiduciaries. By exercising fiduciary acts, power, control, and discretion, they became functional fiduciaries. Their positions of

1   dealing with the Plan and employees on behalf of BSC as long standing employer, and Sponsor,

2   and Administrator of the 2000 Plan and other employee benefits, put it in such a position of trust

3   and confidence with all participants and employees, and particularly Mr. Masters, that it owed

4   them a fiduciary duty to appropriately administer the Plan, properly disclose participant's rights,

5   properly disclose the terms and conditions of the 2000 Plan, assist them in exercising and

6   safeguarding their rights, and prevent breaches and violations of the Plan.

7       81. Their failure to do so was the proximate cause of Mr. Masters' inability to exercise

8   his options.

9       82. But for this failure, and breach of its fiduciary duties, Mr. Masters would have

10  exercised his options and gained $891,248.

### XV. FIRST ALTERNATIVE CLAIM FOR RELIEF
### REINSTATEMENT BECAUSE LEAVE OF ABSENCE
### WAS LESS THAN THREE YEARS

13      83. The allegations of paragraphs 1 through 82 above are reiterated and incorporated

14  herein by reference.

15      84. Mr. Masters is treated as a continuing employee with 12 years of service for most

16  purposes under BSC's policies.  As a continuing employee, he would have the right to exercise

17  his options under the 2000 Plan until 2010.  They are now worth approximately $230,000.  Mr.

18  Masters requests reinstatement of the options.  Mr. Masters requests that treatment for his

19  options under the 1992 and 1995 Plans as well.

### XVI. SECOND ALTERNATIVE CLAIM FOR RELIEF
### BENEFIT OF RETROACTIVE AMENDMENT OF PLAN

22      85. The allegations of paragraphs 1 through 84 above are reiterated and incorporated

23  herein by reference.

24      86. BSC has retroactively amended its Plans to make the rule of 62 applicable to all

25  grants thereunder, illustrating the intention to provide participants with that benefit.

26      87. Mr. Master's requests the benefit of that amendment for his options under the 2000

27  Plan and those under the 1992 and 1995 Plans as well.

28      WHEREFORE, plaintiff Donald Masters prays for judgment awarding the

following relief:

    1. Damages in the sum of $1,300,000;

    2. Prejudgment interest at the legal rate of 10% from January 12, 2004;

    3. In the alternative, reinstatement or reformation of the stock option grants to allow for exercise through the original 10 year exercise period, which ran from 2000 to 2010;

    4. Plaintiff's attorney's fees incurred herein;

    5. Plaintiff's cost incurred herein;

    6. And such other further relief this court deems just and proper.

Robert B. Nichols
Stephen R. Pappas
Attorneys for Plaintiff
Donald Masters

# EXHIBIT B



1  ROBERT B. NICHOLS (SB# 224763)
   nichols@nicholslawgroup.com
2  300 South First Street, Suite 205
   San Jose, CA 95113
3  Telephone: (408) 298-9755
   Facsimile: (408) 298-9699
4  Attorney for Plaintiff
   DONALD MASTERS

5  STEPHEN R. PAPPAS (SB# 158560)
   550 S. California Ave., Suite 320
6  Palo Alto, California 94306
   Telephone: 650 858-8400
7  Facsimile: 650 858-8508

FILED

UC:

2007 JUN -6  AM 11: 56

_____ ___/CLERK
SUPERIOR COURT OF CA
COUNTY OF SANTA CLARA
__ ML ___ DEPUTY

M. Rosales

8          SUPERIOR COURT OF THE STATE OF CALIFORNIA
9            IN AND FOR THE COUNTY OF SANTA CLARA

10  DONALD MASTERS,                    )
11              Plaintiff,             )    Case No. 107 CV085180
12       vs.                          )
13                                     )    FIRST AMENDED COMPLAINT
14                                     )
    BOSTON SCIENTIFIC CORPORATION,     )
15  BOSTON SCIENTIFIC CORPORATION 2000 )
    LONG TERM INCENTIVE PLAN and  DOES )
16  1-50,                              )
17              Defendants.            )

18                    INITIAL COMPLAINT

19               I. JURISDICTION AND PARTIES

20      1.  At all times relevant hereto, Plaintiff Donald Masters ("Mr. Masters") has been a
21  resident of the State of California, County of Santa Clara.

22      2.  At all times relevant hereto, Boston Scientific Corporation ("BSC") has been a
23  Delaware corporation with its principal place of business in Massachusetts.

24      3. The primary Plan at issue in this dispute is the Boston Scientific Corporation 2000
25  Long Term Incentive Plan. ("2000 Plan" or "2000 Stock Option Plan").  Plaintiff believes the
26  Plan is not a legal person, but, as a precaution, names it as a party.

27

28

4. Plaintiffs are ignorant of the true names and capacities of defendants sued herein as DOES 1 through 50, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe and thereon allege that each of the fictitiously-named defendants is responsible in some manner for the occurrences alleged herein, and that plaintiffs' damages as herein alleged were proximately caused by their conduct. Included among the Doe defendants are the BSC Board of Directors and any unnamed Committee or Committees which acted as Administrator(s) of the 2000 Plan, and Human Resources personnel acting or designated as Administrator for ministerial purposes only.

6. At all times relevant hereto, each of the defendants named herein was the agent and employee of each of the other defendants, and in doing the things herein alleged, was acting within the course and scope of such agency and employment and with the permission and consent of its co-defendants.

## II. VENUE

7. Venue lies in Santa Clara County, because Plaintiff resides in this County; Defendant has offices and factories in and does business in this County; and some of the breaches alleged occurred in this County. This action arises in Santa Clara County because it arose from Plaintiff's employment with Defendant at offices then in Sunnyvale, Santa Clara, and Mountain View, California; some of the breaches alleged occurred in Santa Clara County; a substantial part of the omissions and events giving rise to Plaintiff's claim occurred in Santa Clara County; and Defendant does business and can be found in Santa Clara County.

## IV. FACTS; GENERAL

9. Mr. Masters is currently employed and in good standing with BSC, with whom he first became employed in July 1994.

10. During his tenure at BSC, it has obtained 12 patents in the field of medical devices

FIRST AMENDED COMPLAINT – Donald Masters v. Boston Scientific Corporation    Page 2 of 15

1    for which he received credit as the inventor or co-inventor.

2        11.  This dispute arises because of the interplay between changes in provisions of BSC's

3    Stock Option Plans and the less than 3 year period between January 2001 and December 2003

4    during which he did not work for BSC.

5                                    V. FACTS
6                    GENERAL STOCK OPTION PROVISIONS

7        12.  BSC has had at least 4 Stock Option Plans, adopted respectively in 1992, 1995,

8    2000, and 2003. The terms of those Plans and the basis of Mr. Masters's allegations herein are

9    discussed more fully at the end of this complaint.  These plans were respectively referred to as

10   Long Term incentive Plans and are denominated by their year of adoption.

11       13.  Under the Plans, a terminated employee lost all rights to grants within 6 months prior

12   to termination, lost all rights to options unvested on the date of termination, and lost all rights to

13   exercise vested options 90 days from the date of termination.

14       14.  The Plans provided that a retired employee kept all options granted, even those

15   granted within 6 months prior to termination; all options granted vested 100% on the date of

16   termination; and the exercise date was extended to 3 years from date of termination:

17              (A) immediately upon the cessation of a Participant's employment or

18              other service relationship with the Company and its Affiliates by reason

19              of the Participant's Disability, or with respect to a Participant who is an

20              employee or director of the Company or its Affiliates, by reason of such

21              Participant's Retirement, all Stock Options, SARs and Restricted Stock

22              Awards held by the Participant (or by a permitted transferee under Section

23              4.a (4)) immediately prior to such Disability or, as applicable, Retirement,

24              will become vested and, where exercisability is relevant, will remain

25              exercisable for the lesser of three years or the period ending on the latest

26              date on which such Stock Option or SAR could have been exercised if the

27              Participant's employment or other service relationship with the Company

28              and its Affiliates had continued unchanged, whereupon such Stock

FIRST AMENDED COMPLAINT – Donald Masters v. Boston Scientific Corporation    Page 3 of 15

1    Options and SARs shall terminate; (quote from 2000 Plan)

2    15.  BSC informed participants that, under the 1992 and 1995 plans, retirement was

3    defined by reference to the BSC's retirement and other benefit plans as termination at or after age

4    62.

5    16.  The confirming agreements for each grant sent to each participant under the 1992 and

6    1995 Plans did not define retirement.

7    17. The 2000 Stock Option Plan was presented to BSC shareholders by its Directors in a

8    proxy statement dated April 3, 2000 for suggested adoption at BSCs May 9, 2000 Annual

9    Shareholders Meeting.

10    18.  The first option grant under the 2000 Plan was made May 9, 2000.

11    19.  Under the 2000 Plan, as reflected in proxy statements filed with the SEC, as well as

12    subsequent plans, an employee was considered retired if on date of termination, the employee

13    was over 50 years old, had worked for BSC at least 5 years, and the sum of his age and years of

14    service equaled 62. ("the rule of 62"):

15         "RETIREMENT":  Unless  the  Administrator  expressly  provides

16         otherwise, cessation of employment or other service relationship with the

17         Company and its Affiliates if, as of the date of such cessation, (i) the

18         Participant has attained age 50 and has accrued at least five years of service

19         with the Company and its Affiliates, and (ii) the sum of the Participant's

20         age and years of service as of such date equals or exceeds 62.

21    20.  Based upon Plaintiff/s knowledge and information as a BSC employee, he alleges that

22    BSC did not inform its employees of the new definition of retirement. It continued to inform

23    them that retirement was defined as age 62 and continued to administer its plans as if the

24    definition had not changed.

25    21.  The confirming agreements for each grant sent to each participant under the 2000

26    Plan led employees to believe the definition of retirement remained the same:

27         For purposes of this Agreement, "Retirement" means cessation of

28         employment and other association with the Company and any affiliates or

FIRST AMENDED COMPLAINT – Donald Masters v. Boston Scientific Corporation Page 4 of 15

subsidiaries of the Company at or after the normal retirement date specified in the Company's pension or other deferred compensation plan applicable generally to employees of the Company or, with the consent of the Committee, any early retirement date so specified.

22.   With respect to whether provisions of the Plan or confirming agreements control when in conflict, the confirming agreements provide:

In the event of a conflict between any term or provision contained in this Agreement and a term or provision of the Plan, the applicable terms and provisions of the Plan will govern and prevail.

23.  BSC has failed and refused to provide Mr. Masters's with any document reflecting a valid amendment to the 2000 Plan removing the rule of 62 from it or delaying its implementation.

24.  The BSC 10-K of March 27, 2002 proposes the amendment of the 1992 and 1995 plans. It would have been approved by the shareholders in May. The amendment provided that, with respect to options granted after May 7, 2001, retirement status is determined under the rule of 62.

25.   Plaintiff is informed that in 2004 BSC made a similar retroactive amendment applicable to all previous grants.

26.  BSC Human Resources personnel have been unwilling or unable and have refused to direct Mr. Masters to any document reflecting that the 2000 Plan was different from or was ever amended to differ from the above described terms. Those terms were reflected in the Plan attached to the company's 2000 proxy statement, as filed with the SEC.

## VI. FACTS
## GENERAL EMPLOYMENT

27.  Mr. Masters began working for BSC in July 1994.

28.  He was born on January 9, 1942.

29.  He left BSC's employment on January 12, 2001.

9.  At that time Mr. Masters had 6.5 years of service with BSC and was 59 years old so that he had more than 5 years of service and the sum of his years of service and age exceeded 62.

FIRST AMENDED COMPLAINT – Donald Masters v. Boston Scientific Corporation Page 5 of 15

30. On December 18, 2003, he returned to BSC as a defined term employee.

31. On May 3, 2004, he again became a regular, fulltime employee of BSC, which is his present status.

32. During his employment with BSC, he received numerous stock option grants discussed below under the 1992, 1995, 2000, and 2003 Plans, both before and after his 2001 – 3 leave of absence.

33. After he left BSC on January 12, 2001, Mr. Masters received no communications from BSC regarding his options.

34. He received no communications from Mellon regarding his options and no communications from BSC regarding Mellon Investor Services ("Mellon") administration of the Plans. Mr. Masters is informed that Mellon formally began administering the Plans shortly after he left BSC.

35. He was not a BSC stockholder in 2000 or thereafter so he did not receive proxy statements, annual reports or other reports of shareholder actions, director action, or proposed actions. He had no access to the portions of the BSC website accessible only to shareholders.

## VII. FACTS
## NON-EXERCISE OF OPTIONS

36. Based upon the information given him by BSC, Mr. Masters believed that all his options expired 90 days after January 12, 2001. At that time BSC's stock price was such that his pre 2001 options were "underwater" and worthless. He did not exercise them.

37. As a result of incorrect information BSC had given to its employees Mr. Masters was unaware that his options were exercisable on January 12, 2004. He therefore made no attempt to exercise them. As is more fully set out below, at that time BSC's stock price was such that the options were worth $891,248 if exercised. Had he known they were exercisable, he would have exercised them.

## VIII. FACTS;
## DISCOVERY OF THE BREACH AND MISREPRESENTATION

38. In January 2007, Mr. Masters began contemplating eventual retirement and determining his financial position.

FIRST AMENDED COMPLAINT – Donald Masters v. Boston Scientific Corporation    Page 6 of 15

39. In so doing, he became curious about and checked the status of options granted to him on and after May 2004, when he reentered permanent regular employment with Defendant BSC.

40. In early January 2007, he contacted one of BSC's Human Resources officers in Nova Scotia who professed ignorance and directed him to an informational matrix on Mellon's website, which now administers BSC's stock option plans.

41. The Mellon Matrix indicated that all Mr. Masters's stock options granted prior to his leaving BSC's employment in 2001 terminated 90 days later on April 12, 2001. It included all grants under the 1992, 1995, and 2000 Plans, including the May 9, July 26, and December 6 grants under the 2000 Plan.

42. In a phone conversation, a Mellon employee informed Mr. Masters that BSC had informed Mellon in 2001 that he was a terminated employee rather than a retired employee and that all his options terminated on April 12, 2001, 90 days after he left BSC employment. He said all Mellon's information was given to it by BSC.

43. This 90-day termination rule was consistent with BSC's representations to Mr. Masters and other BSC employees and with Mr. Masters's previous understanding from BSC of the rules governing options granted during his first period of employment with BSC.

44. However, the nature of the matrix's reference to the rule of 62 was confusing. He wondered if it had affected his pre 2001 option grants.

45. On January 16, 2007, Mr. Masters talked to Mr. Tony Ronan, who worked for a Nova Scotia company to which BSC had outsourced some of its Human Resources functions.

46. Mr. Ronan stated that on January 12, 2001, Mr. Masters had been eligible for the rule of 62 and should have had 36 months to exercise his options.

47. Mr. Ronan stated that Mr. Masters should have been informed by the BSC Human resources Department at termination and have been asked to sign an "understanding of terms"

48. Mr. Ronan stated that Mr. Masters should have been given notice by Mellon previous to the expiration of the 36 month exercise period.

49. Mr. Ronan expressed his opinion that BSC thought all this was happening.

FIRST AMENDED COMPLAINT – Donald Masters v. Boston Scientific Corporation    Page 7 of 15

1    50. Mr. Ronan stated that Mr. Masters had missed his last chance to exercise the option

2  at 36 months and the period could not be extended.

3    51. Mr. Ronan referred Mr. Masters to Dan Bird and Kathleen Shober of the Global

4  Compensation Department.

5    52. On January 19, 2007, Mr. Masters inquired about the options at the office of Ms.

6  Susan Marconi in California. Referring to several one-page documents she held in her hands, she

7  informed him that the rule of 62 did not come into effect until May 2001. She did not provide or

8  show the documents to Mr. Masters.

9    53. Mr. Masters started asking questions. On February 5, 2007, he sent an email

10  requesting clarification to Linda Clifford.

11    54. On February 27, 2007, Dan Bird replied in an email that the rule of 62 had applied to

12  all of Mr. Masters's pre 2001 options so that they vested 100% when he left BSC and were

13  exercisable until January 12 2004. He copied Susan Marconi and Linda Clifford. Mr. Bird told

14  Mr. Masters he should have known this; it was his responsibility to know and take appropriate

15  action; and, consequently, there was nothing BSC could do.

16    55. A March 9, 2007 email from Mr. Bird to Mr. Masters did not copy the other parties

17  to the first email exchange. In it Mr. Bird stated that he had made a mistake in the February 27

18  email. Attached to it was a matrix Mr. Bird said was in effect on January 12, 2001. It reflected

19  that the rule of 62 applied only to options granted after May 19, 2001.

20    56. Mr. Masters challenged the purported matrix's authenticity as a 2001official

21  document because it looked inauthentic, contained no document dates, and included 2004 plan

22  grants.

23    57. Mr. Bird admitted that the matrix was something he had put together himself.

24    58. Mr. Masters then requested his employment records and had several exchanges

25  concerning them with Mr. Michael Lucey of BSC's Fremont office.

26    59. On two occasions, Mr. Lucey informed Mr. Masters that all his pre 2001 options had

27  terminated 90 days after he left BSC.

28    60. Mr. Masters then began searching BSC SEC filings for information.

FIRST AMENDED COMPLAINT – Donald Masters v. Boston Scientific CorporationPage 8 of 15

61. He discovered that the 2000 BSC stock option plan presented for approval by BSC stockholders in the company's 2000 proxy statement contained the rule of 62, making his options exercisable on 3 years after he left BSC.

62. He confronted Ms. Marconi and Mr. Lucey in an April 3, 2007 email with this information and asked for an explanation.

63. Ms. Marconi responded that she would set up a conference call.

64. He was put off for some time until a conference call was scheduled for April 19, 2007 between him, Kathleen Shober, and Anne Thompson.

65. Mr. Masters requested his attorneys to participate.

66. During the conference call, Kathleen Shober and Thompson claimed that the rule of 62 had not been put into effect because BSC's accounting department or outside financial or accounting consultants had said that to do so would endanger BSC's ability to use the pooling method of accounting for corporate acquisitions and mergers.

67. They said BSC switched to the purchase method of accounting after May 2001, when it began using the rule of 62 for all option grants.

68. They asserted that the definition of retirement for all plans and grants prior to May 2001 was age 62. When asked if this was as stated in the BSC retirement plan, they refused to answer.

69. When asked if there had been any valid action or if any document reflected explicit, valid action by the BSC Board of Directors or any Committee to change the rule of 62 provision in the 2000 plan, they refused identify any document or answer in any way.

## IX. FACTS
### SPECIFIC OPTION GRANTS

46. On January 12, 2004, BSC Stock closed at $36.25. Mr. Masters received the following 2000 Plan Options (which are reflected on the Mellon matrix as having expired January 12, 2001) with the following stock split/dividend equivalences, exercise prices, and values as of January 12, 2004 under the 2000 Plan prior to leaving BSC on January 2, 2001:

| Grant Date | Split Equivalence of Shares Granted | Exercise Price | Value Of Options |
|---|---|---|---|

FIRST AMENDED COMPLAINT – Donald Masters v. Boston Scientific Corporation     Page 9 of 15

| | | | |
|---|---|---|---|
| a) May 9, 2000 | 7000 | $14.156 | $154,658 |
| b) July 25, 2000 | 7000 | $8.500 | $194,250 |
| c) Dec. 6, 2000 | 18000 | $6.120 | $542,340 |
| | | | ———— |
| TOTAL | | | $891,248 |

47.  He received another grant of 3000 shares under the 2000 Plan on May 3, 2004 after returning to his employment with BSC. Since he is still employed by BSC, that grant is still exercisable and is not in dispute.

48.  Mr. Masters received the following 1992 Plan Options with the following current stock split/dividend equivalences under the 2000 Plan prior to leaving BSC on January 2, 2001:

| Grant Date | Split Equivalence | |
|---|---|---|
| a) Dec. 7, 1999 | 2220 | N/A |

49.  Mr. Masters received the following 1995 Plan Options with the following stock split/dividend equivalences prior to leaving BSC on January 2, 2001:

| Grant Date | Shares Granted | Split Equivalence |
|---|---|---|
| a) April 19, 1999 | 2500 | 5000 |
| b) May 9, 1996 | 2000 | |
| c) May 4, 1998 | | 6600 |
| d) May 5, 1997 | | |

## IX. FIRST CLAIM FOR RELIEF
## BREACH OF CONTRACT

50.  The allegations of paragraphs 1 through 49 above are reiterated and incorporated herein by reference.

51.  BSC's Stock Option Plans, including its 2000 Plan, constitute and are in the nature of contracts with its employees.

52.  BSC grants participants the opportunity to later acquire shares at a hoped for favorable price in return for the participants' agreement to pay the exercise price and provide hoped for additional productivity and innovation.

FIRST AMENDED COMPLAINT – Donald Masters v. Boston Scientific Corporation  Page 10 of 15

53.  BSC had and has a contractual duty of good faith, fair dealing, and honesty in fulfilling its contractual obligations under the Plan.

54.  In misinforming participants with respect to and failing to disclose BSC's contractual obligation to allow exercise of the options within 3 years rather than 90 days of termination, BSC breached its contractual duties.

56.  But for this contractual breach, Mr. Masters would have exercised his options and gained $891,248.

## X. SECOND CLAIM FOR RELIEF
### BSC's MISREPRESENTATION, FAILURE TO DISCLOSE, OR MISTAKE

57.  The allegations of paragraphs 1 through 56 above are reiterated and incorporated herein by reference.

58.  BSC informed Mr. Masters and other Participants in the 2000 Plan through employee verbal and written communications, the option grant confirmation agreements, other documents, and websites of BSC, Mellon, and others that to be considered retired under the 2000 Stock Option Plan, one must be at least 62 years old, as specified in the Company's Retirement Plan.

59.  BSC had a duty to properly represent and disclose the Plan's exercise terms.

60.  But for this misrepresentation, failure to disclose, and/or mistake, Mr. Masters would have exercised his options and gained $891,248.

## XI. THIRD CLAIM FOR RELIEF
### MISREPRESENTATION, FAILURE TO DISCLOSE, OR MISTAKE
### BY BSC'S OFFICERS, DIRECTORS, EMPLOYEES, AND AGENTS

61.  The allegations of paragraphs 1 through 60 above are reiterated and incorporated herein by reference.

62.  BSC's officers, directors, employees, and agents had a duty to properly implement the 2000 Plan and properly represent and disclose the Plan's exercise terms.  Some of them were named as Administrators of the Plan.

63.  As part of their duties, BSC's officers, directors, employees, and agents informed Mr. Masters and other Participants in the 2000 Plan through employee verbal and written communications, the option grant confirmation agreements, other documents, and websites of

1  BSC, Mellon, and others that to be considered retired under the 2000 Stock Option Plan, one

2  must be at least 62 years old, as specified in the Company's Retirement Plan.

3      64.  But for this misrepresentation, failure to disclose, and/or mistake, Mr. Masters would

4  have exercised his options and gained $891,248.

## XI. FOURTH CLAIM FOR RELIEF
### BSC'S FAILURE TO ADMINISTER THE STOCK OPTION PLANS
### WITH PRUDENCE, REASONABLE CARE, AND COMPETENCE

7      65.  The allegations of paragraphs 1 through 64 above are reiterated and incorporated

8  herein by reference.

9      66.  In establishing the Long Term Incentive Plans, BSC undertook to, and had an

10  independent duty to, administer the Plan with prudence, reasonable care, and competence.

11      67.  Such a standard requires informing participants of the terms of the Plan and their

12  actual exercise rights, their rights thereunder, not misinforming them, and assisting them in

13  safeguarding their rights.

14      68.  BSC did not meet this standard.

15      69.  But for this failure, imprudence, lack of care, and lack of competence, Mr. Masters

16  would have exercised his options and gained $891,248.

## XII. FIFTH CLAIM FOR RELIEF
### FAILURE OF BSC'S OFFICERS, DIRECTORS, EMPLOYEES, AND AGENTS
### TO ADMINISTER THE STOCK OPTION PLANS
### WITH PRUDENCE, REASONABLE CARE, AND COMPETENCE

20      70.  The allegations of paragraphs 1 through 69 above are reiterated and incorporated

21  herein by reference.

22      71.  BSC's officers, directors, employees, and agents undertook to, and had an

23  independent duty to, administer the Plan with prudence, reasonable care, and competence.  Some

24  of them were named as Administrators of the Plan.

25      72.  Such a standard requires informing participants of the terms of the Plan and their

26  actual exercise rights, their rights thereunder, not misinforming them, and assisting them in

27  safeguarding their rights.

28      73.  BSC's officers, directors, employees, and agents did not meet this standard.

FIRST AMENDED COMPLAINT – Donald Masters v. Boston Scientific Corporation  Page 12 of
15

74. But for this failure, imprudence, lack of care, and lack of competence, Mr. Masters would have exercised his options and gained $891,248.

## XIII. SIXTH CLAIM FOR RELIEF
### BSC'S BREACH OF FIDUCIARY DUTY TO APPROPRIATELY ADMINISTER THE PLANS, DISCLOSE PARTICIPANTS' RIGHTS, PREVENT BREACHES AND VIOLATIONS OF THE PLAN

75. The allegations of paragraphs 1 through 74 above are reiterated and incorporated herein by reference.

76. BSC's position as long standing employer and Sponsor of the 2000 Plan and other employee benefits, (as well as its naming the Plans' Administrators) put it in such a position of trust and confidence with all participants and employees, and particularly Mr. Masters, that it owed them a fiduciary duty to appropriately administer the Plan, properly disclose participant's rights, properly disclose the terms and conditions of the 2000 Plan, assist them in exercising and protecting their rights, and prevent breaches and violations of the Plan.

77. Its failure to do so was the proximate cause of Mr. Masters's inability to exercise his options.

78. But for this failure, and breach of its fiduciary duties,, Mr. Masters would have exercised his options and gained $891,248.

## XIV. SEVENTH CLAIM FOR RELIEF
### BREACH OF FIDUCIARY DUTY TO APPROPRIATELY ADMINISTER THE PLANS, DISCLOSE PARTICIPANTS' RIGHTS, PREVENT BREACHES AND VIOLATIONS OF THE PLAN BY BSC'S OFFICERS, DIRECTORS, EMPLOYEES AND AGENTS

79. The allegations of paragraphs 1 through 78 above are reiterated and incorporated herein by reference.

80. BSC's officers, directors, employees, and agents implemented, administered, and conducted its fiduciary acts, responsibilities, and duties on BSC's behalf. Some of them were named Administrators of the Plan. As such they were also fiduciaries. By exercising fiduciary acts, power, control, and discretion, they became functional fiduciaries. Their positions of dealing with the Plan and employees on behalf of BSC as long standing employer, and Sponsor,

FIRST AMENDED COMPLAINT – Donald Masters v. Boston Scientific Corporation  Page 13 of 15

1  and Administrator of the 2000 Plan and other employee benefits, put them in such a position of

2  trust and confidence with all participants and employees, and particularly Mr. Masters, that they

3  owed the employees a fiduciary duty to appropriately administer the Plan, properly disclose

4  participant's rights, properly disclose the terms and conditions of the 2000 Plan, assist them in

5  exercising and safeguarding their rights, and prevent breaches and violations of the Plan.

6      81.  Their failure to do so was the proximate cause of Mr. Masters's inability to exercise

7  his options.

8      82.  But for this failure, and breach of its fiduciary duties, Mr. Masters would have

9  exercised his options and gained $891,248.

10                    **XV. FIRST ALTERNATIVE CLAIM FOR RELIEF**
                       **REINSTATEMENT BECAUSE LEAVE OF ABSENCE**
11                        **WAS LESS THAN THREE YEARS**

12      83.  The allegations of paragraphs 1 through 82 above are reiterated and incorporated

13  herein by reference.

14      84.  Mr. Masters is treated as a continuing employee with 12 years of service for most

15  purposes under BSC's policies.  As a continuing employee, he would have the right to exercise

16  his options under the 2000 Plan until 2010.  They are now worth approximately $230,000.  Mr.

17  Masters requests reinstatement of the options.  Mr. Masters requests that treatment for his

18  options under the 1992 and 1995 Plans as well.

19                    **XVI. SECOND ALTERNATIVE CLAIM FOR RELIEF**
                       **BENEFIT OF RETROACTIVE AMENDMENT OF PLAN**
20

21      85.  The allegations of paragraphs 1 through 84 above are reiterated and incorporated

22  herein by reference.

23      86.  BSC has retroactively amended its Plans to make the rule of 62 applicable to all

24  grants thereunder, illustrating the intention to provide participants with that benefit.

25      87.  Mr. Masters's requests the benefit of that amendment for his options under the 2000

26  Plan and those under the 1992 and 1995 Plans as well.

27      **WHEREFORE**, plaintiff Donald Masters prays for judgment awarding the

28  following relief:
        1.  Damages in the sum of $891,248;

            FIRST AMENDED COMPLAINT – Donald Masters v. Boston Scientific Corporation  Page 14 of
15

2. Prejudgment interest at the legal rate of 10% from January 12, 2004;

3. In the alternative, reinstatement or reformation of the stock option grants to allow for exercise through the original 10 year exercise period, which ran from 2000 to 2010;

4. Plaintiff's attorney's fees incurred herein;

5. Plaintiff's cost incurred herein;

6. And such other further relief this court deems just and proper.

Robert B. Nichols
Stephen R. Pappas
Attorneys for Plaintiff
Donald Masters.

FIRST AMENDED COMPLAINT – Donald Masters v. Boston Scientific Corporation  Page 15 of

# EXHIBIT C

1  Bingham McCutchen LLP
   THOMAS E. KUHNLE (SBN 178055)
2  KRISTEN M. PEZONE (SBN 224057)
   1900 University Avenue
3  East Palo Alto, CA 94303-2223
   Telephone: 650.849.4400
4  Facsimile: 650.849.4800
   Email: tom.kuhnle@bingham.com
5  Email: kristen.pezone@bingham.com

6  Attorneys for Defendant
   BOSTON SCIENTIFIC CORPORATION

7

**ENDORSED**

**2007 JUL 19 P 12: 14**

KIRI TORRE, CLERK OF THE SUPERIOR COURT
COUNTY OF SANTA CLARA, CALIFORNIA
BY: _____
          DEPUTY CLERK

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                 IN AND FOR THE COUNTY OF SANTA CLARA

10

| 11 DONALD MASTERS, | Case No. 107CV085180 |
|---|---|
| 12         Plaintiff, | DEFENDANT BOSTON SCIENTIFIC CORPORATION'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT |
| 13      v. | |
| 14 BOSTON SCIENTIFIC CORPORATION, BOSTON SCIENTIFIC CORPORATION 2000 | |
| 15 LONG TERM INCENTIVE PLAN, and DOES 1-50, | |
| 16 | Complaint Filed: May 2, 2007 |
| 17         Defendants. | Trial Date: None Set |

18

19          Defendant Boston Scientific Corporation ("Defendant"), which was sued in its

20  own name and incorrectly as "Boston Scientific Corporation 2000 Long Term Incentive Plan,"

21  answers the unverified First Amended Complaint of Plaintiff Donald Masters ("Plaintiff") as

22  follows:

23                            **GENERAL DENIAL**

24          Pursuant to California Code of Civil Procedure § 431.30, Defendant generally

25  denies each and every allegation of the First Amended Complaint including, but not limited to,

26  that Plaintiff is entitled to any relief requested, that Defendant is liable for any wrongful conduct

27  or omission, whether alleged or otherwise, and that conduct or omissions of Defendant caused

28  any injury or damages to Plaintiff in the manner or amount alleged, or at all.

A/72095250.2/0088579-0000326656

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT

1                                    **AFFIRMATIVE DEFENSES**

2              Further answering, and without assuming the burden of proof not otherwise borne

3    by the answering party, Defendant asserts the following affirmative defenses to the First

4    Amended Complaint:

5                                    **FIRST AFFIRMATIVE DEFENSE**
6                                        (Failure to State a Claim)

7              The First Amended Complaint fails to state a claim upon which relief may be

8    granted.

9                                    **SECOND AFFIRMATIVE DEFENSE**
                                          (Improper Venue)
10             This Court is not the proper venue to adjudicate this action.

11                                    **THIRD AFFIRMATIVE DEFENSE**
12                                            (Uncertainty)

13             Each of Plaintiff's claims is vague and uncertain.

14                                    **FOURTH AFFIRMATIVE DEFENSE**
15                                       (No Proximate Causation)

16             Plaintiff's claims are barred because Plaintiff suffered no damages that were

17   proximately caused by, or, in fact, caused by any action or conduct of Defendant.

18                                    **FIFTH AFFIRMATIVE DEFENSE**
                                         (Negligence of Plaintiff)
19             Plaintiff's claims are barred because any damages suffered by Plaintiff were

20   proximately caused by Plaintiff's own negligence.

21                                    **SIXTH AFFIRMATIVE DEFENSE**
22                                        (Comparative Fault)

23             The First Amended Complaint is limited by the doctrine of comparative fault.

24                                    **SEVENTH AFFIRMATIVE DEFENSE**
                                           (Failure to Mitigate)
25             The First Amended Complaint, and each of its causes of action are barred either

26   in whole or in part by Plaintiff's failure to mitigate his damages claimed, if any exist.

27

28

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT

1

## EIGHTH AFFIRMATIVE DEFENSE
### (Acts of Others)

2

3    Each of Plaintiff's claims are barred because Plaintiff's damages, if any, were the

result of Plaintiff's own conduct or the acts of third parties.

4

## NINTH AFFIRMATIVE DEFENSE
### (Statutes of Limitations)

5

6    The First Amended Complaint is barred by each and every applicable statute of

7    limitation including, but not limited to, California Code of Civil Procedure § 338.

8

## TENTH AFFIRMATIVE DEFENSE
### (Assumption of Risk)

9

10    Plaintiff acted with full knowledge and understanding of the circumstances

11    surrounding the matters at issue and freely assumed the risk of loss and/or damage with respect

12    thereto.

13

## ELEVENTH AFFIRMATIVE DEFENSE
### (Doctrine of Unclean Hands)

14    Plaintiff's claims are barred by the doctrine of unclean hands.

15

## TWELFTH AFFIRMATIVE DEFENSE
### (Reasonable Care)

16

17    Defendant exercised reasonable care and did not know, or in the exercise of

18    reasonable care, could not have known, of any misleading statements, or any omissions of

19    material facts alleged in the First Amended Complaint.

20

## THIRTEENTH AFFIRMATIVE DEFENSE
### (No Actual or Justifiable Reliance)

21    Plaintiff's claims are barred from recovery because Plaintiff either did not rely or

22    unjustifiably relied on the representations, action, conduct or omissions of Defendant as alleged

23    in the First Amended Complaint.

24

25

26

27

28

A/72095250.2/0088579-0000326656                    3

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT

1

### FOURTEENTH AFFIRMATIVE DEFENSE
(Business Judgment Rule)

2

3
Plaintiff cannot recover any damages since the alleged acts or omissions

attributed to Defendant by the First Amended Complaint are protected by the business judgment

4
rule.

5

### FIFTEENTH AFFIRMATIVE DEFENSE
(Justification)

6

7
Each of Plaintiff's claims is barred because Defendant's actions were justified.

8

### SIXTEENTH AFFIRMATIVE DEFENSE
(No Basis for Fraud and Negligent Misrepresentation)

9

10
The First Amended Complaint, and each cause of action therein, including but not

limited to fraud and negligent misrepresentation, fail because Defendant did not negligently,

11

12
knowingly or recklessly make any false and misleading statements and/or material omissions to

13
Plaintiff.

### SEVENTEENTH AFFIRMATIVE DEFENSE
14
(Waiver and Estoppel)

15
Plaintiff's claims are barred by the doctrines of waiver and estoppel.

16

### EIGHTEENTH AFFIRMATIVE DEFENSE
(Good Faith Action or Omission)
17

18
Plaintiff is not entitled to damages because any alleged act or omission by

19
Defendant was in good faith and Defendant had reasonable grounds for believing that its act or

20
omission, if any, was not a violation of any applicable law.

21

### NINETEENTH AFFIRMATIVE DEFENSE
(Good Faith Reliance)
22

23
Plaintiff's claims are barred because Defendant acted in good faith conformity

with, and reliance on, a written administrative regulation, order, ruling, approval and/or an
24

administrative practice or enforcement policy of those agencies with respect to the class of
25

employer to which Defendant belongs.
26

27

28

A/72095250.2/0088579-0000326656                     4

---

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT

## TWENTIETH AFFIRMATIVE DEFENSE
### (Doctrine of Laches)

Plaintiff's claims are barred by the doctrine of laches.

## TWENTY-FIRST AFFIRMATIVE DEFENSE
### (Privileged Acts)

Each of Plaintiff's claims is barred because Defendant's actions were privileged.

## TWENTY-SECOND AFFIRMATIVE DEFENSE
### (Consent)

Each of Plaintiff's claims are barred because Plaintiff had knowledge of and consented to the acts of Defendant as alleged in the First Amended Complaint, if in fact any such acts occurred.

## TWENTY-THIRD AFFIRMATIVE DEFENSE
### (No Duty)

Defendant owed and owes no duty to Plaintiff.

## TWENTHY-FOURTH AFFIRMATIVE DEFENSE
### (No Fiduciary Duty)

Defendant owed and owes no fiduciary duty to Plaintiff.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE
### (No Damages)

The First Amended Complaint fails to state a cause of action because Plaintiff has not suffered and will not suffer any damages as a result of any action or inaction of Defendant.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE
### (No Basis for Attorneys' Fees)

The First Amended Complaint fails to state a claim for attorneys' fees as there is no legal basis to award such fees.

WHEREFORE, Defendant prays for judgment as follows:

1.    That the First Amended Complaint, and each and every cause of action contained therein, be dismissed with prejudice and that Plaintiff take nothing by this action;

2.    That Defendant be granted its costs of suit herein;

3.    That Defendant be granted attorneys' fees; and

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT

1        4.      That the Court grant such other and further relief as is just and proper.

2    DATED: July 19, 2007                    Bingham McCutchen LLP

3

4

5                                    By: _____
                                                Thomas E. Kuhnle
6                                           Attorneys for Defendant
                                     BOSTON SCIENTIFIC CORPORATION

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT