Jeffrey W. Shopoff (Bar No. 46278)
Gregory S. Cavallo (Bar No. 173270)
James M. Robinson (Bar No. 238063)
Shopoff & Cavallo LLP
505 Sansome Street, Suite 1505
San Francisco, CA 94111
Telephone: 415-984-1975
Facsimile: 415-984-1978

Attorneys for Plaintiff DONALD MASTERS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DONALD MASTERS,<br><br>            Plaintiff,<br>v.<br><br>BOSTON SCIENTIFIC CORPORATION, BOSTON SCIENTIFIC CORPORATION 2000 LONG TERM INCENTIVE PLAN, and DOES 1 though 50,<br><br>            Defendants. | CASE NO. 5-07-03792 (JW)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF DONALD MASTERS' MOTION FOR LEAVE TO SERVE ADDITIONAL INTERROGATORIES**<br><br>**[F.R.C.P. Rules 33 and 26(b)(2); Local Rule 33-3]**<br><br>Date:   June 3, 2008<br>Time:   10:00 a.m.<br>Place:   Courtroom 2, 5th Floor<br>Judge:   Magistrate Judge Howard R. Lloyd |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................... 1

II. BACKGROUND OF THE DISPUTE ............................................................................. 1

III. ARGUMENT ................................................................................................................... 3

    A. Legal Standard ..................................................................................................... 3

    B. Plaintiff's Interrogatories Satisfy The F.R.C.P. Rule 26(b)(2) Test ..................... 4

        1. The Discovery Sought Is Not Unreasonably Cumulative Or Duplicative, And Cannot Be Obtained From Some Another Source That Is More Convenient, Less Burdensome, Or Less Expensive ................................................................................ 4

        2. Plaintiff Has Not Had Ample Opportunity To Obtain The Information By Discovery In This Action ................................... 5

        3. The Benefit Outweighs The Burden And Expenses Of The Proposed Discovery .......................................................................... 6

    C. Plaintiff's Local Rule 33-3 Statement .................................................................. 6

IV. CONCLUSION .............................................................................................................. 13

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Archer Daniels Midland Co. v. Aon Risk Services, Inc. of Minn.*
    (D MN 1999) 187 F.R.D. 578 .................................................................................. 3

**Statutes**

Federal Rules of Civil Procedure
    Rule 26(b)(2) ............................................................................................................ 3, 4
    Rule 26(b)(2)(iii) ........................................................................................................ 6
    Rule 33(a)(1) ............................................................................................................. 3

Northern District of California Local Rule 33-3 .................................................................. 3, 4, 6

Internal Revenue Code Section 409A .................................................................................. 10

SHOPOFF & CAVALLO LLP

ii
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO SERVE ADDITIONAL INTERROGATORIES**

## I.   INTRODUCTION

Plaintiff Donald Masters ("Plaintiff") brings this Motion for Leave to Serve Additional Interrogatories on the basis that the pending million dollar dispute with Boston Scientific Corporation ("BSX") involves finite but intricate issues that demand interrogatory responses, not deposition testimony. Most of the facts are undisputed in this case, and both parties have stated that they believe the action can be resolved on cross-motions for summary judgment. However, in order to move forward in this action, BSX must state its position with some degree of accountability. BSX, to date, has taken conflicting positions with respect to the ultimate conclusion of this case, has served evasive responses to Plaintiff's first set of interrogatories, and has refused to stipulate to allow Plaintiff to serve any additional interrogatories even though several of the additional interrogatories are simple redrafts to address BSX's objections to the first set of interrogatories.

## II.   BACKGROUND OF THE DISPUTE

This action arises out of stock options that were granted to Plaintiff from 1996 to 2000 by his employer, defendant BSX. BSX's agent, Mellon Investor Services, represented to Plaintiff at the time of his retirement in 2001 that his stock options would expire 30 days after his retirement date, which was in accordance with Plaintiff's understanding of BSX's retirement policies. Plaintiff, however, later discovered that in 2000 BSX had modified the plan under which his stock options were granted (the 2000 Long-Term Incentive Plan ("2000 Plan")) to provide that stock options granted under that plan expired 3 years after the applicable retirement date. The 3-year term was provided as long as the employee holding the options met the requirements of the "Rule of 62," which provides:

> Unless the Administrator expressly provides otherwise, cessation of employment or other service relationship with the Company and its Affiliates if, as of the date of such cessation, (i) the Participant has attained age 50 and has accrued at least five years of service with the Company and its Affiliates, and (ii) the sum of the Participant's age and years of service as of such date equals or exceeds 62.

It is undisputed that Plaintiff qualified under the "Rule of 62" at the time of his retirement. When Plaintiff addressed this issue with BSX, prior to filing the pending lawsuit, he was initially told that the Rule of 62 did not apply to him. Then, BSX changed its position and told Plaintiff that the

Rule of 62 did apply and that his options were good for 3 years, but that it was his responsibility to know the rule, and therefore he had no claim. Then, BSX changed its position once again and stated that the Rule of 62 did not apply to Plaintiff, and that in fact his options had expired 3 months after his retirement.

In this litigation, BSX has taken the position that the definition of "Retirement" in BSX's 2000 Non-Qualified Stock Options Agreements (the "2000 Agreements") – which were issued almost simultaneously with the first stock options under the 2000 Plan – constituted the "Administrator expressly provid[ing] otherwise," as required by the 2000 Plan. The 2000 Agreements defined "Retirement" as follows:

> Cessation of employment and other association with the Company and any affiliates or subsidiaries of the Company at or after the normal retirement date specified in the Company's pension or other deferred compensation plan applicable generally to employees of the Company or, with the consent of the Committee, any early retirement date so specified.

Plaintiff's position in this litigation is that the definition of "Retirement" in the 2000 Agreements, as stated immediately above, fails to "expressly provide" that the Rule of 62 does not apply, and therefore that Plaintiff's options did not expire until 3 years after his retirement. The definition of "Retirement" in the 2000 Agreements does not contain a definitive statement that the Rule of 62 does not apply, nor does it state with any specificity what the retirement date is. It simply states that the retirement date can be in one of three sources: (1) BSX's pension plan generally applicable to employees; (2) BSX's deferred compensation plan generally applicable to employees; or (3) any early date specified by the Committee. BSX asserts that the retirement date specified in BSX's 401(k) plan governs, but simply ignores the fact that the retirement date could be provided for in other places, such as the 2000 Plan. Plaintiff's position is further supported by language in the 2000 Agreements which states:

> In the event of a conflict between any terms or provisions contained in this Agreement and a term or provision of the Plan, the applicable terms and provisions of the Plan will govern and prevail.

On June 6, 2007, Plaintiff filed this action in the Superior Court of the State of California, County of Santa Clara, alleging the following causes of action: (1) breach of contract; (2)

misrepresentation, failure to disclose, or mistake; (3) failure to administer the stock option plan with prudence, reasonable care, and competence; and (4) breach of fiduciary duty.  On February 27, 2008, Plaintiff served its first set of interrogatories and document requests.  BSX responded to those discovery requests on April 2, 2008, objecting in some form or another to each and every request.  In order to address some of BSX's objections to Plaintiff's interrogatories, on April 9, 2008, Plaintiff's attorneys wrote BSX's attorneys requesting that they stipulate to allow Plaintiff to serve additional interrogatories, which consisted of reformulations of prior requests which BSX had objected to, and some new requests.  Plaintiff's attorneys also provided BSX's attorneys with a copy of the draft second set of interrogatories.  On April 18, 2008, BSX's attorneys stated that they refused to stipulate to allow Plaintiff to serve additional interrogatories at this time.  Plaintiff's rejected meet and confer efforts are further detailed in the concurrently filed Declaration of James M. Robinson.

**III.    ARGUMENT**

   **A.    Legal Standard**

Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories.  F.R.C. P. Rule 33(a)(1).  Leave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(2).  *Id.*  Moreover, to obtain an order allowing more than 25 interrogatories, a party must make a "particularized showing" why the additional discovery is necessary.  *Archer Daniels Midland Co. v. Aon Risk Services, Inc. of Minn.* (D MN 1999) 187 F.R.D. 578, 586; see ND CA Rule 33-3.

Rule 26(b)(2) provides the applicable standard for consideration of additional interrogatories.  That test states that the Court should determine whether:

    (1)    the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

    (2)    the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

    (3)    the burden or expenses of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

3
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO SERVE ADDITIONAL INTERROGATORIES

Local Rule 33-3 requires that:

> A motion for leave to propound more interrogatories than permitted by FRCivP33 must be accompanied by a memorandum which sets forth each proposed additional interrogatory and explains in detail why it is necessary to propound the additional questions.

### B.   Plaintiff's Interrogatories Satisfy The F.R.C.P. Rule 26(b)(2) Test

Prior to addressing why each interrogatory is necessary as required by Local Rule 33-3, Plaintiff will address why interrogatories in general, as opposed to deposition testimony, is the most efficient manner to conduct discovery on many of the issues in this action. In doing so, Plaintiff will discuss the standard set forth by F.R.C.P. Rule 26(b)(2) for granting leave to serve additional interrogatories.

#### 1.   The Discovery Sought Is Not Unreasonably Cumulative Or Duplicative, And Cannot Be Obtained From Some Another Source That Is More Convenient, Less Burdensome, Or Less Expensive

Plaintiff asks the Court for permission to file 18 additional interrogatories. These interrogatories include 10 substantive interrogatories, and 8 which are merely follow-ups to contention interrogatories. Of the 10 substantive interrogatories, 3 are reformulations of requests asked in the first set of interrogatories to which BSX gave evasive responses. Only 7 substantive interrogatories are entirely new.

In response to Plaintiff's first set of interrogatories, BSX sought to take advantage of the definition of the "Rule of 62." For example, Interrogatory No. 4 asked BSX to: "Identify documents and things which support or relate to your contention that the Rule of 62 does not apply to the stock options granted to plaintiff Donald Masters in the year 2000." This is a straightforward request. However, BSX responded by stating: "Contrary to Interrogatory #4, Defendant does not contend that, as defined, the "Rule of 62" does not apply to the stock options granted to plaintiff Donald Masters in the year 2000." While it was clear that Plaintiff was asking for BSX to state all facts to support its position that the formula for determining retirement age under the Rule of 62 did not apply to Plaintiff, BSX took advantage of the language "[u]nless the Administrator expressly provides otherwise" in the definition of "Rule of 62," and provided Plaintiff with a useless response. BSX's response essentially states that the "Rule of 62" does apply, but the retirement formula

portion of the rule does not because the administrator expressly provided for a different retirement age. That evasive response clearly did not provide Plaintiff with the information requested. By way of this motion, Plaintiff simply seeks to re-ask a question to which BSX gave an evasive response.

BSX also gave an evasive response to Interrogatory No. 1, which asked when was the first time BSX applied the "Rule of 62." BSX took advantage of the same loophole in the definition of the Rule of 62 discussed above by stating that the Rule of 62 applied when the 2000 Plan was approved by its stockholders. What Plaintiff asked was when was the first time the retirement formula portion of the "Rule of 62" was applied, not when BSX "expressly provided otherwise." Again, BSX's response is useless to Plaintiff. If this motion is granted, Interrogatories Nos. 28 and 29 ask essentially the same question as Interrogatory No. 1, but in a manner in which BSX must provide a straightforward answer.

Interrogatories are the most efficient and least costly manner in which Plaintiff can obtain the requested information. The alternative to interrogatories is conducting several depositions of BSX representatives, all of whom need to study documents and consult with others to provide meaningful responses. The cost of doing that, in relation to responding to interrogatories, is astronomically higher. Moreover, the nature of this dispute involves very technical issues. BSX's position on those issues is likely not known to one person, and requires application of the facts of the case to the applicable law in order for BSX to state its ultimate position. BSX, to date, has refused to do that. In order for this case to move forward, BSX must take a position in this case and state that position to Plaintiff. Additional interrogatories are the most convenient, most efficient, and least expensive means to accomplish that task.

    **2.    Plaintiff Has Not Had Ample Opportunity To Obtain The Information By Discovery In This Action**

Discovery is at its earliest stages. BSX has produced no documents and has provided inadequate and evasive responses to Plaintiff's first set of interrogatories. Plaintiff has not had an opportunity to obtain the requested information by other means, nor is it economical or efficient to do so.

///

### 3. The Benefit Outweighs The Burden And Expenses Of The Proposed Discovery

In analyzing the comparative benefit versus burden of additional interrogatories, the Federal Rules provide that the Court should look to: (1) the needs of the case; (2) the amount in controversy; (3) the parties' resources; (4) the importance of the issues at stake in the action; and (5) the importance of the discovery in resolving the issues. F.R.C.P. Rule 26(b)(2)(iii). In the pending action, both parties agree that the case can be resolved on cross-motions for summary judgment. See the Joint CMC Statement, Section 4. That makes interrogatory responses all the more critical for understanding the parties' respective positions, and for the parties to be bound to those respective positions.

Plaintiff in this action claims an amount of approximately $1 million. The cost associated with 18 additional interrogatories pales in comparison to the size of the claim, and in comparison to the overall cost of litigation this matter. Moreover, BSX is a Fortune 500 company of significant resources. The cost of responding to 18 additional interrogatories is not an excessive financial burden to BSX.

The additional interrogatories Plaintiff seeks to serve on BSX go to the crux of this dispute. That is, whether BSX indeed takes the position that the only document that "expressly provides" for a retirement date other than the formula used in the "Rule of 62" is the definition of "Retirement" in the 2000 Agreements. Plaintiff's interrogatories seek to have BSX answer that question, provide documents to support its response, and to state all facts to support when and why the "Rule of 62" was introduced (if they in fact intended *not* to immediately implement it). These issues are highly relevant and critical to resolving the primary issues of this action.

### C. Plaintiff's Local Rule 33-3 Statement

**INTERROGATORY NO. 28:**

When did BSX first apply a formula for calculation of retirement age or date to stock options granted under the Boston Scientific 2000 Long-Term Incentive Plan (the "2000 Plan") that permitted a retirement age of less than 62 years of age?

///

**WHY INTERROGATORY NO. 28 IS NECESSARY**:

This interrogatory is necessary because it establishes whether BSX treated any other employees or representatives differently than it is attempting to treat Plaintiff. If, for example, another employee who had been granted stock options under the 2000 Plan retired shortly before or after Plaintiff, and BSX applied a retirement age of less than 62 to that employee's stock options, such information would clearly be vital to Plaintiff's claims. As discussed above, Plaintiff attempted to ask a similar question in interrogatory No. 1, but BSX responded in an evasive manner. Moreover, this interrogatory seeks to discover whether BSX applied any retirement rule other than the formula provided for in the Rule of 62.

**INTERROGATORY NO. 29**:

When did BSX first apply the following rule, or a rule producing a similar result, to stock options granted under the Boston Scientific 2000 Long-Term Incentive Plan (the "2000 Plan")?

> "Retirement": Cessation of employment or other service relationship with the Company and its Affiliates if, as of the date of such cessation, (i) the Participant has attained age 50 and has accrued at least five years of service with the Company and its Affiliates, and (ii) the sum of the Participant's age and years of service as of such date equals or exceeds 62.

The definition of retirement which is stated immediately above, which is the same as the definition stated in the 2000 Plan except for the intentional omission of the phrase "[u]nless the Administrator expressly provides otherwise," is hereinafter referred to as the "Rule of 62."

**WHY INTERROGATORY NO. 29 IS NECESSARY**:

This interrogatory is a reformulation of Interrogatory 1, to which BSX gave an evasive response. This request is similar to Interrogatory No. 28, but limits the request to BSX's application of the formula used in the "Rule of 62." This interrogatory is necessary for the same reasons as Interrogatory No. 28.

**INTERROGATORY NO. 30**:

Does BSX contend that the Rule of 62 does not apply to the stock options granted to plaintiff Donald Masters in the year 2000?

///

**WHY INTERROGATORY NO. 30 IS NECESSARY**:

This interrogatory is a reformulation of Interrogatory No. 4, to which BSX gave an evasive response. BSX previously responded, as described earlier, by stating that it does not contend that the Rule of 62 does not apply to the stock options granted to Plaintiff. BSX's response evaded responding to the question by taking advantage of the definition of the "Rule of 62" provided in the first set of interrogatories. This interrogatory seeks to cure that prior defect by redefining the "Rule of 62" (as provided for in Interrogatory No. 29).

A response to this request is clearly necessary to this action. This interrogatory is what the case is all about. If BSX's position is that Plaintiff's stock options were not subject to an early retirement rule, BSX should state that position.

**INTERROGATORY NO. 31**:

If your response to No. 30 is anything but an unqualified "no," identify all documents and things which support or relate to your contention.

**WHY INTERROGATORY NO. 31 IS NECESSARY**:

Interrogatory 31 is a follow-up contention interrogatory. It is necessary for the same reasons as Interrogatory 30 above. Identifying documents to support BSX's position is critical in this instance because if BSX's position is that an early retirement formula did not apply to Plaintiff, Plaintiff is entitled to know upon which documents BSX's relies (and specifically, which – if any – documents "expressly provide otherwise").

**INTERROGATORY NO. 32**:

Does BSX contend that the language "with the consent of the Committee, any early retirement date so specified," as stated in BSX's 2000 Long-Term Incentive Plan Non-Qualified Stock Option Agreements (the "2000 Agreements"), cannot refer to the Rule of 62?

**WHY INTERROGATORY NO. 32 IS NECESSARY**:

This interrogatory is necessary because thus far BSX has taken the position that the definition of "Retirement" in the 2000 Agreements "expressly provided otherwise," as required by the 2000 Plan. The 2000 Agreements provide that the retirement date can be in: (1) BSX's pension plan generally applicable to employees; (2) BSX's deferred compensation plan generally applicable to

employees; or (3) any early date specified by the Committee. BSX has taken the position that this language can refer only to BSX's 401(k) plan. However, Plaintiff believes that the third option (any early date specified by the Committee) can include the 2000 Plan. Whether or not BSX takes the position that the early retirement formula stated in the Rule of 62 can be an early date specified by the Committee is critical to Plaintiff's understanding of BSX's position in this case.

**INTERROGATORY NO. 33:**

If your response to No. 32 is anything but an unqualified "no," identify all documents and things which support or relate to your contention.

**WHY INTERROGATORY NO. 33 IS NECESSARY:**

This interrogatory is simply a follow-up contention interrogatory which asks BSX to identify all documents to support its position. It is necessary for the same reasons as Interrogatory No. 32.

**INTERROGATORY NO. 34:**

If your response to No. 32 is anything but an unqualified "no," state all facts to support your contention.

**WHY INTERROGATORY NO. 34 IS NECESSARY:**

This interrogatory is simply a follow-up contention interrogatory which asks BSX to state all facts to support its position. It is necessary for the same reasons as Interrogatory No. 32.

**INTERROGATORY NO. 35:**

If your response to No. 32 is anything but an unqualified "no," identify all witnesses to support your contention.

**WHY INTERROGATORY NO. 35 IS NECESSARY:**

This interrogatory is simply a follow-up contention interrogatory which asks BSX to identify all witnesses to support its position. It is necessary for the same reasons as Interrogatory No. 32.

**INTERROGATORY NO. 36:**

Do you contend that the phrase "deferred compensation plan," as used in the 2000 Agreements, is a term defined by the 2000 Agreements?

///

///

**WHY INTERROGATORY NO. 36 IS NECESSARY:**

As stated in the discussion on Interrogatory No. 32, BSX has stated the definition of "Retirement" in the 2000 Agreements means BSX's 401(k) because that is the only "deferred compensation" plan applicable to employees. BSX contends that the 2000 Plan is not a "deferred compensation plan" under Internal Revenue Code Section 409A. This interrogatory seeks to understand on what basis BSX applies IRC Section 409A to a term in the 2000 Agreements. This issue is critical to Plaintiff's understanding of BSX's position in this case.

**INTERROGATORY NO. 37:**

If your response to No. 36 is anything but an unqualified "no," state all facts to support your contention.

**WHY INTERROGATORY NO. 37 IS NECESSARY:**

This interrogatory is simply a follow-up contention interrogatory which asks BSX to state all facts to support its position. It is necessary for the same reasons as Interrogatory No. 36.

**INTERROGATORY NO. 38:**

State all facts to support BSX's claim (as stated in BSX's response to Interrogatory No. 10) that Internal Revenue Code section 409A and its implementing regulations provide the definition of "deferred compensation plan" applicable to the 2000 Agreements.

**WHY INTERROGATORY NO. 38 IS NECESSARY:**

This interrogatory is similar to Interrogatory No. 37, except that it asks on what basis BSX applies IRC Section 409A. This interrogatory is necessary in the instance that BSX states that the 2000 Agreements do not define "deferred compensation." In that instance, Plaintiff is entitled to understand on what basis BSX relies on that code section.

**INTERROGATORY NO. 39:**

Identify all BSX documents that provide for a retirement age less than 62 years old.

**WHY INTERROGATORY NO. 39 IS NECESSARY:**

This interrogatory is necessary because BSX has taken the position that BSX's 401(k), albeit somewhat arbitrarily, should be the document which provides the retirement date applicable to Plaintiff's stock options. Since BSX is taking the position that other documents can provide the

SHOPOFF & CAVALLO LLP

10
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO SERVE ADDITIONAL INTERROGATORIES**

retirement date under the 2000 Plan, Plaintiff is entitled to know what other documents exist which provide for retirement dates that differ from that stated in the 401(k) plan.

**INTERROGATORY NO. 40:**

Do you contend that the Administrator (as defined in the 2000 Plan) made an affirmative statement that the formula for calculation of retirement used in the 2000 Plan would not apply to the stock options granted to Donald Masters in the year 2000?

**WHY INTERROGATORY NO. 40 IS NECESSARY:**

This interrogatory is necessary because, to date, BSX has simply stated that the definition of "Retirement" in the 2000 Agreements "expressly provided otherwise" with respect to the applicable retirement date. Plaintiff believes that in order to "expressly provide otherwise" under the law, BSX must have made an affirmative representation that: (1) the retirement date formula in the Rule of 62 did not apply; and (2) that the retirement date was something else (other than the formula in the Rule of 62). It is necessary that Plaintiff know whether it is BSX's position that it affirmatively stated that the retirement date formula portion of the Rule of 62 was not going to apply to Plaintiff's stock options. Whether or not BSX takes that position is a critical element to this action.

**INTERROGATORY NO. 41:**

If your response to No. 40 is anything but an unqualified "no," state all facts to support your contention.

**WHY INTERROGATORY NO. 41 IS NECESSARY:**

This interrogatory is simply a follow-up contention interrogatory which asks BSX to state all facts to support its position. It is necessary for the same reasons as Interrogatory No. 40.

**INTERROGATORY NO. 42:**

If your response to No. 40 is anything but an unqualified "no," identify all documents and things which support or relate to your contention.

**WHY INTERROGATORY NO. 42 IS NECESSARY:**

This interrogatory is simply a follow-up contention interrogatory which asks BSX to identify all documents to support its position. It is necessary for the same reasons as Interrogatory No. 40.

///

**INTERROGATORY NO. 43:**

State all reasons BSX added the following definition to the 2000 Plan:

> "Retirement": Unless the Administrator expressly provides otherwise, Cessation of employment or other service relationship with the Company and its Affiliates if, as of the date of such cessation, (i) the Participant has attained age 50 and has accrued at least five years of service with the Company and its Affiliates, and (ii) the sum of the Participant's age and years of service as of such date equals or exceeds 62.

**WHY INTERROGATORY NO. 43 IS NECESSARY:**

It is Plaintiff's understanding that BSX issued the 2000 Plan, with the Rule of 62 stated within, then almost immediately issued the 2000 Agreements, which BSX now contends stated a retirement rule different than the 2000 Plan. Plaintiff is entitled to know why BSX would issue conflicting agreements at practically the same time. This goes directly to the credibility of BSX's position in this case.

Moreover, Plaintiff is entitled to know why BSX implemented an early retirement date formula when no such rule had previously existed. Such an understanding is relevant to why or why not BSX would insert the Rule of 62 into the 2000 Plan, and then supposedly revoke the earlier retirement rule state in the 2000 Agreements issued under that 2000 Plan.

**INTERROGATORY NO. 44:**

State all reasons BSX added the following definition to the 2000 Agreements:

> For purposes of this Agreement, "Retirement" means cessation of employment and other association with the Company and any affiliates or subsidiaries of the Company at or after the normal retirement date specified in the Company's pension or other deferred compensation plan applicable generally to employees of the Company or, with the consent of the Committee, any early retirement date so specified.

**WHY INTERROGATORY NO. 44 IS NECESSARY:**

This interrogatory is necessary for the same reasons as Interrogatory No. 43. It is the other end of the question of why BSX issued what it contends are contradicting documents, one providing for an early retirement, and one – according to BSX – providing for a retirement age of 62.

///

///

SHOPOFF & CAVALLO LLP

12
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO SERVE ADDITIONAL INTERROGATORIES**

**INTERROGATORY NO. 45:**

State all facts explaining why, under BSX's stated position in this case, BSX did not immediately implement the formula for calculation of retirement age stated in Interrogatory No. 29.

**WHY INTERROGATORY NO. 45 IS NECESSARY:**

This interrogatory is a follow up to Interrogatories Nos. 43 and 44, but asks BSX to specifically explain why it did not immediately implement the early retirement formula stated in the Rule of 62. It is necessary and relevant for the same reasons as Interrogatories Nos. 43 and 44, and specifically addresses the basis for BSX's position that Plaintiff's stock options were exercisable for only 3 months after his retirement in 2001.

## IV. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Leave to File Supplemental Interrogatories should be granted.

DATED: April 24, 2008                SHOPOFF & CAVALLO LLP


By _____/s/_____
    James M. Robinson
Attorneys for Plaintiff
DONALD MASTERS